**IN THE COURT OF APPEALS OF IOWA**

No. 19-1802
Filed January 23, 2020

**IN THE INTEREST OF O.W.,**
**Minor Child,**

**B.W., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Marion County, Steven Guiter,

District Associate Judge.

The mother appeals the termination of her parental rights to her child.

**AFFIRMED.**

Blake D. Lubinus of Lubinus & Merrill, P.L.C., Des Moines, for appellant

mother.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant

Attorney General, for appellee State.

Ashley M. Sparks of Cooper, Goedicke, Reimer & Sparks, PC, West Des

Moines, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and May and Greer, JJ.

**GREER, Judge.**

The mother appeals the termination of her parental rights to her child, O.W., born in 2018.[1]  The mother maintains the statutory grounds for termination have not been met, termination is not in O.W.'s best interests, the court should have applied a permissive factor to save the parent-child relationship, and a six-month extension to work toward reunification is warranted.

### I.  Background Facts and Proceedings.

O.W. tested positive for amphetamines at her birth in July 2018; the mother tested positive for methamphetamine and admitted to using the drug while pregnant.  Before O.W. was discharged from the hospital, the Iowa Department of Human Services (DHS) intervened and removed O.W. from the mother's care.  The mother's aunt and uncle accepted placement of O.W.  The child remained with these relatives throughout the proceedings.

At the time of the termination hearing in October 2019, the mother had a part-time job and her own apartment.  She consistently attended one visit a week with O.W., when O.W. was brought to the mother's home.  But, at least in the months leading up to the termination hearing, the mother generally failed to take advantage of the other four weekly visits she was offered with the child.  The mother tested positive for amphetamines in January 2019 and methamphetamine in April.  She had drug-test patches placed on her twice in March but did not show up to have either removed or tested.  According to her testimony, the mother last used methamphetamine on May 26, 2019.  She testified she hoped to achieve a

---

[1] The parental rights of the legal and the biological fathers were also terminated. Neither father appeals.

sober lifestyle. Yet she conceded she failed to complete any formal substance-abuse program throughout the case, though stating she was attending NA/AA and other recovery meetings several times weekly.

After hearing the evidence, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) (2019). She appeals.

## II. Standard of Review.

We review termination-of-parental-rights proceedings de novo. *In re A.R.*, 932 N.W.2d 588, 589 n.1 (Iowa Ct. App. 2019). We examine both the facts and law; we adjudicate anew those issues properly preserved and presented. *Id.*

## III. Discussion.

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(h), which allows the court to terminate when it finds by clear and convincing evidence that all the following have been proved:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother challenges only the fourth element—whether O.W. could return to her care at the time of the termination hearing. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (interpreting "at the present time" to mean "at the time of the termination hearing"). The mother argues O.W. could be returned to her care

because, at the time of the termination hearing, she had stable housing and a job.[2] We acknowledge the mother's strengths—her ability to maintain housing and generally hold a job during the case weigh in her favor. But these facts alone do not show the mother can safely parent O.W.

The mother is a long-time user of methamphetamine. *Cf. In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) (concluding a parent's addiction to methamphetamine can create an environment dangerous for children's physical, mental, and social wellbeing). She previously lost her parental rights to three other children after DHS intervened in 2015, at least in part over her use of methamphetamine. While the mother claims she has maintained sobriety since late May 2019, during the nearly five months between her claimed sobriety date and the termination trial, the mother failed to participate every time DHS asked her to complete a drug test. Even if we credit the mother's testimony that she last used methamphetamine in late May 2019, she had less than five months sobriety at the time of the termination trial. *See In re J.S.-G*, No. 13-1795, 2014 WL 70306, at *3 (Iowa Ct. App. Jan. 9, 2014) (affirming termination of mother's parental rights where she had five months of sobriety at the time of termination hearing but also had not been "consistently sober for many years"). We cannot say the mother has achieved sobriety, and placing O.W. in her care would put the child at risk of adjudicatory harm. *See In re M.M.,* 483 N.W.2d 812, 814 (Iowa 1992) ("[A] child cannot be returned to the parent under Iowa Code section 232.102 if by doing so the child would be exposed

---

[2] We note that in her petition on appeal, the mother also maintains she had reliable transportation as part of her support for her argument O.W. could be returned to her care. However, at trial, the mother testified she lacked transportation.

to any harm amounting to a new child in need of assistance adjudication."). The statutory grounds for termination have been met.

Next, we consider whether termination of the mother's parental rights is in O.W.'s best interests. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (rejecting an unstructured best-interests test); *see also* Iowa Code § 232.116(2) (requiring a court, in considering the child's best interests, to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child"). The mother maintains it is not in O.W.'s best interests to have the mother's rights terminated because of the progress the mother has made since the case began. But, as we noted before, while the mother has some positive factors weighing in her favor, those factors do not convince us the mother is able to keep O.W. safe while being a full-time parent to her. The mother has never had O.W. in her custody outside the hospital. Although she was allowed up to five visits per week with O.W., she generally spent much less time with the child. On the other hand, O.W. has been placed in the home of her maternal relatives since being discharged from the hospital. According to the guardian ad litem, O.W. is comfortable in her placement and views it as her home. The relatives are prepared to make O.W. part of their family permanently. *See* Iowa Code § 232.116(2)(b). Termination is in O.W.'s best interests.

Third, the mother maintains the parent-child relationship should be saved because relatives have legal custody of O.W. and termination would harm O.W. because of the closeness of the parent-child relationship. *See id.* § 232.116(3)(a), (c). While the mother and O.W. have been described as sharing a bond, we note

that O.W. was never in the care of the mother outside the hospital. Neither their amount of time together nor any fact in the record leads us to believe that O.W. will be more harmed by termination of the mother's rights than she is by the mother's ongoing inability to take over care of her. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("Although it is clear that [the parent] loves her [child], our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs."). Additionally, while the court need not terminate if a relative has legal custody, "[a]n appropriate determination to terminate a parent-child relationship is not be countermanded by the ability and willingness of a family relative to take the child." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). The mother has not persuaded us this discretionary exception should be applied. *See A.S.*, 906 N.W.2d at 475–76.

Finally, the mother asks for six more months to work toward reunification with O.W. To continue placement of the child outside the home and give the parent more time, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). But we cannot say six more months would obviate the need for O.W.'s removal. We question the mother's claim of sobriety. She missed all of the requested drug tests after her positive April 2019 test and lied to the social worker about where she was as the social worker witnessed her walking down the street with a known drug

user.[3] We hope the mother is on the road to recovery, but we have not seen enough evidence that an extension to work toward reunification is warranted.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**

---

[3] At the termination trial, the social worker testified that within the previous six weeks, she personally saw the mother "in town with other people that are known to be using." The social worker immediately called the mother's phone; the mother answered and reported being elsewhere than she was.